UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| 1010 S. MAIN STREET, an Illinois Partnership, plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| TOWN OF NORMAL, a municipal Corporation, CHRISTOPHER KOOS individually and in his capacity as Mayor of the Town of Normal, MARK PETERSON individually and in his capacity as City Manager of the Town of Normal, JEFFREY M. TINERVIN and ILLINOIS CONSTRUCTION, L.L.C., | ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED

Case No. 11 -_____ |
| defendants. | ) | |

## COMPLAINT

Plaintiff 1010 South Main Street, an Illinois Partnership, by its undersigned counsel, alleges for its complaint against defendants Town of Normal, Illinois, a municipal corporation, Christopher Koos, individually and in his capacity as Mayor of the Town of Normal, Mark Peterson individually and in his capacity as City Manager of the Town of Normal, Jeffrey M. Tinervin and Illinois Construction, LLC, as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

#### The Parties

1. Plaintiff 1010 South Main Street (sometimes referred to as "1010 S. Main, LLC", or the "Partnership") is an Illinois partnership doing business in Illinois, with its principal place of business located in McLean County, Illinois.

2. Defendant Town of Normal ("Normal" or the "Town"), is a municipal corporation organized under the Illinois Municipal Code of the State of Illinois, 65 ILCS 5/1 et al. (the "Municipal Code").

3. Defendant Christopher Koos (the "Mayor") is the current duly elected Mayor of the Town, and has held that office since 2003.

4. Defendant Mark Peterson is the City Manager of the Town. At all times pertinent to this case, and in the capacities set forth above, defendants Koos and Petersen were acting under color of State law.

5. Defendant Illinois Construction, LLC ("IC") is an Illinois limited liability company, organized under the laws of the State of Illinois, with its principal place of business in Normal, Illinois.

6. Defendant Jeffrey Tinervin is a local land developer, and resident of McLean County, Illinois. Mr. Tinervin also is the registered agent for, and one of the two members of, IC.

## Jurisdiction and Venue

7. Federal subject matter jurisdiction exists over this case pursuant to 28 U.S.C. § 1331 in that this case arises under federal law — specifically, 42 U.S.C. § 1983 — and supplemental (or pendant) jurisdiction exists over the non-federal claims under 29 U.S.C. § 1967 in that such claims form part of the same case or controversy.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that all defendants reside in this District and that a substantial part of the events and omissions at issue in this case occurred in this District.

## The Background

8. On or about March 22, 2008, the Partnership entered into a purchase option agreement (the "Purchase Agreement"), with Carmike Cinemas ("Carmike"), owners of University Cinemas, to purchase the property located at 1010 South Main Street in Normal, Illinois (the "Property"), for the purpose of developing a student housing project (the "Project).

9. On or about July 6, 2009, the Partnership filed an initial plan to rezone and develop the Property, guided by the Town of Normal staff to be in compliance with the interim guidelines of the Main Street Corridor ("Interim Guidelines").

10. During the period July 2009 through November 2009, the Partnership formalized a fully developed plan for the Project (the "Site Plan").

11. On or about December 10, 2009, the Partnership presented the Site Plan to the Town of Normal Planning Commission. The Planning Commission voted 5 to 2 in favor of rezoning the Property and 4 to 3 in favor of the Site Plan.

12. The Site Plan and the Project remained subject to the formal approval of the Normal City Council, but when the Planning Commission supports a project, the City Council generally approves it as a matter of course or, if it does not, it provides specific, reasonable reasons as to why it is overriding the considered judgment of the Planning Commission, and then applies those reasons to other parties who might later pursue a similar project.

13. In this case, however, Mr. Tinervin, a private developer, wanted the Project defeated by the Council because he determined that he (or an entity he owned or controlled) should proceed with a project similar to the Project.

14. Despite having no formal position with the Town, Mr. Tinervin has a close and, at times, inappropriate relationship with City Manager Peterson pursuant to which he is able to cause Mr. Peterson to take actions that are in Mr. Tinervin's best interests even when they are not in the best interests of the Town.

15. As a result, upon learning of the Planning Commissions support for the Project, Mr. Tinervin contacted Mr. Peterson and told him that he wanted the Council to defeat or to delay the Project by delaying a vote on or rejecting the Site Plan.

16. In response to this direction from Mr. Tinervin, Mr. Peterson sent an email (on December 10, 2009) to the Mayor telling the Mayor to find a way to postpone the vote on the Site Plan at the City Council Meeting scheduled for December 21, 2009.

17. The foregoing email was not discovered by plaintiff — and indeed was hidden from plaintiff despite plaintiff's repeated requests for information pertinent to the Project — until April 2011, when the Town provided the email to plaintiff's counsel as one of many documents in response to a FOIA request and related proceedings in Case No. 10-MR-249 in McLean County, Illinois.

18. On December 11, 2009, unaware of Messrs. Tinervin's and Peterson's behind-the-scenes conduct, the Partnership paid Carmike a $25,000 non-refundable deposit — in addition to funds it previously had provided to Carmike — to extend the expiration of the Purchase Agreement from December 11, 2009, to December 31, 2009, as plaintiff awaited the City Council's formal approval of the Project.

19. On or about December 21, 2009, Mr. Tinervin, based on his relationship and discussions with Mr. Peterson, contacted a member of the Partnership and informed him that the Site Plan would be voted down at the City Council Meeting scheduled for that evening.

20. On December 21, 2009, the City Council voted down the Project as a result of the pressure exerted by the Mayor on the Council in response to the directions the Mayor had received from Mr. Peterson at the behest of Mr. Tinervin.

21. On or about December 22, 2009, the Partnership informed Carmike that the Council voted down the Project and that it would not be able to exercise the option to purchase the Property.

22. A week later, on or about December 29, 2009, the architect for IC tendered a site plan on behalf of IC (the "IC Plan") to City Manager Peterson.

23. On February 10, 2010, Carmike entered into a contract with Mr. Tinervin, doing business as Cinema Partners, Inc. (the "Contract), to purchase the Property.

24. On February 12, 2010, Mr. Tinervin assigned his interest in the Contract to IC, in which Mr. Tinervin possesses a significant financial interest.

25. On February 25, 2010, IC applied to the Town for a Special Use Permit for the Property (the "IC Permit").

26. On or about March 18, 2010, the Town's Zoning Board of Appeals approved the IC Permit and the City Council thereafter approved the IC Plan.

27. In the following months, IC completed its project (the "IC Project") on the Property, which has been extremely profitable for IC, and would have been for the plaintiff had they it permitted to proceed with the Project.

28. The Town did not require the IC Project to be in compliance with the Interim Guidelines, and the City Counsel approved the IC Plan even though it ran afoul of a number of the purported reasons it had provided for rejecting the Project.

29. The IC Project did not differ materially from the Partnership's proposed Project (other than its failure to have to comply with the Interim Guidelines).

30. In fact, the Project as proposed by the Partnership was either equivalent or superior in every significant and material way to the IC project, and was rejected because of the relationship between Mr. Tinervin, Mr. Peterson and the Town.

## CAUSES OF ACTION

### COUNT I
*Equal Protection Claim against Town of Normal, Mayor Koos and City Manager Peterson*

31. Plaintiff repeats and restates the foregoing allegations of this Complaint as if fully recited again here.

32. The conduct of defendants Town of Normal, Mayor Koos and City Manager Peterson, as described above, constituted a violation of plaintiff's rights to the equal protection of the laws in that no rational basis existed for the Town to select the IC Project over the equivalent and in many ways superior Site Plan and Project.

33. In view of the foregoing, plaintiff is entitled to compensatory damages from the defendants in an amount to be determined at trial, but no less than $50,000, and also is entitled to punitive damages from the individual defendants and to its reasonable attorneys' fees and expenses, as well as the costs of this suit.

### COUNT II
*Tortious Interference with Prospective Business Relations against Jeffrey Tinervin and Illinois Construction, LLC*

34. Plaintiff repeats and restates the foregoing allegations of this Complaint as if fully recited again here.

35. Mr. Tinervin's's conduct, on behalf of himself and IC, in causing the rejection of the plaintiff's Project, constituted an unlawful interference in plaintiff's Project with the Town, was accomplished through improper means, and was not justified by any lawful right that Mr. Tinervin was pursuing nor by any bona fide competitive relationship between IC and the plaintiff at the time of the interference.

36. In view of the foregoing, plaintiff is entitled to compensatory damages from Mr. Tinervin and IC, in an amount to be determined at trial, but no less than $50,000, as well as punitive damages, and to the costs of this suit.

### COUNT III
*Tortious Interference with Contract against City Manager Peterson*

37. Plaintiff repeats and restates the foregoing allegations of this Complaint as if fully recited again here.

38. At the time of the December 21 planned Council Meeting, City Manager Peterson was aware of the Purchase Agreement.

39. Mr. Peterson also knew at the time that, by delaying the approval of the plaintiff's Project, he would cause plaintiff to lose its option under the Agreement.

40. Nevertheless, Mr. Peterson intentionally and willfully caused the Mayor to cause the City Council to reject the plaintiff's Project on December 21, 2009, thereby causing plaintiff to forfeit its rights under the Purchase Agreement.

41. As a result of the foregoing, plaintiff lost the Purchase Agreement, as well as the Project, and suffered damages well in excess of $50,000.

42. In view of the foregoing, plaintiff is entitled to compensatory damages from Mr. Peterson, in an amount to be determined at trial, but no less than $50,000, as well as punitive damages, and to the costs of this suit.

## COUNT IV
### *Conspiracy against Jeffrey Tinervin, Illinois Construction, LLC and City Manager Mark Peterson*

43. Plaintiff repeats and restates the foregoing allegations of this Complaint as if fully recited again here.

44. In causing the rejection of the plaintiff's Project and the loss of the Purchase Agreement, Mr. Tinervin, IC and City Manager Peterson engaged in a meeting of the minds to accomplish a wrongful result through improper action.

45. As a result, each of the co-conspirators is liable for the wrongdoing and misconduct of the other as alleged in Counts II and III above.

46. Mr. Peterson is neither a decision-maker nor a person vested by the Town with policy-making discretion with respect to the conduct of, or the delaying of, City Council Meetings.

47. In view of the foregoing, plaintiff is entitled to compensatory damages from Mr. Tinervin, IC and Mr. Peterson in an amount to be determined at trial, but no less than $50,000, as well as punitive damages, and to the costs of this suit.

## CONCLUSION

WHEREFORE, plaintiff prays that, following a trial by jury, this Court enter judgment for plaintiff and against the defendants for compensatory and punitive damages, as well as attorneys' fees, expenses and cost, all as alleged above, and that the Court grant plaintiff such other and further relief as the Court may deem just and proper.

Dated: December 21, 2011

Respectfully submitted,

By: /s/ Jonathan A. Backman
       Jonathan A. Backman

Jonathan A. Backman (ID #6196243)
Law Office of Jonathan A. Backman
117 North Center Street
Bloomington, Illinois 61701-5001
(309) 820-7420
FAX: (309) 820-7430
jbackman@backlawoffice.com

*Attorney for Plaintiff 1010 South Main Street, an Illinois Partnership*